**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DR. GEORGIOS ALEXOPOULOS<br><br>Plaintiff,<br><br>v.<br><br>SSM HEALTH ST. LOUIS UNIVERSITY HOSPITAL, DR. PHILIPPE MERCIER, and DR. JEROEN COPPENS,<br><br>Defendants. | ) | Case No. 4:25-cv-00988-MAL |

**MEMORANDUM AND ORDER**

Before the Court is Defendants Dr. Jeroen Coppens, Dr. Philippe Mercier, and SSM Health St. Louis University Hospital's ("SSM-SLUH") Motion to Dismiss (Doc. 14). This Court **GRANTS** Defendants' Motion to Dismiss with respect to Counts IV and VI as applied to all Defendants, Count III against SSM-SLUH, and Count V with respect to Drs. Mercier and Coppens. The Court **DENIES** Defendants' Motion with respect to all other counts.

## I. Facts and Background

Dr. Georgios Alexopoulos brings various discrimination and harassment claims against Defendants following his tenure as a neurosurgery resident at SSM-SLUH (Doc. 1 ¶¶ 1–2). In 2018, the U.S. Department of State granted Alexopoulos—a Greek national—a J-1 visa sponsorship for up to nine years to allow him to complete a neurosurgery residency program at SLU Hospital. *Id.* at ¶ 15. Alexopoulos' J-1 visa was strictly bound to the program. *Id.* at ¶ 33. Dr. Alexopoulos alleges that Defendants exploited this vulnerability by coercing him into accepting excessive work at his workplace (SSM-SLUH), threating him with termination that would jeopardize his immigration status, and inflicting punitive measures such as extra duties and

extended hours for making complaints about patient safety and working conditions. *Id.* at ¶¶ 33–34, 54–55, 117.

In June 2024, Dr. Alexopoulos received news that his widowed mother had been found bedridden and required 24-hour care, following the recent death of his father. *Id.* at ¶ 96. Under duress, Dr. Alexopoulos submitted his involuntary resignation email, but upon learning that the Family Medical Leave Act (FMLA) does not require managerial approval, he rescinded his resignation and submitted an FMLA request to care for his ailing mother. *Id.* at ¶¶ 109–120. About a month later, Dr. Alexopoulos was involuntarily dismissed from the program while on FMLA leave. *Id.* at ¶ 114. Dr. Alexopoulos has not been able to secure employment in the United States and is also prevented from working abroad, as hospitals require certification of his training and work experience over the past six years. *Id.* at ¶ 124.

Dr. Alexopoulos filed a six-count Complaint against Defendants SSM-SLUH, Dr. Mercier, and Dr. Coppens. Defendant Dr. Mercier is the Division Director of Neurosurgery at SLU hospital, and Dr. Alexopoulos claims Dr. Mercier was directly involved in discriminatory and retaliatory action against Dr. Alexopolous. *Id.* at ¶ 12. Defendant Dr. Coppens is the Program Director of the Neurosurgery Residency Program at SLU Hospital, and Dr. Alexopoulos likewise claims that Dr. Coppens was directly involved in discriminatory and retaliatory actions against Dr. Alexopolous. *Id.* at ¶ 13. Defendants filed a motion to dismiss counts III, IV, V, and VI against all Defendants (Doc. 14).

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). This standard requires a plaintiff to show at the pleading stage that success on the merits is more

than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must includeeither direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Twombly*, 550 U.S. at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id.*

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

This Court has jurisdiction over the federal claims (Counts I, II, III, VII) under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims (Counts IV, and V) under 28 U.S.C. § 1367 (Doc. 1 at 27–31).

## III. Application of Law to Facts

### A. Counts III (FMLA Retaliation) and VI (Title VII Discrimination) Against SSM-SLUH

SSM-SLUH seeks to dismiss Counts III and VI (the FMLA Retaliation and Title VII claims, respectively) on the basis that Dr. Alexopoulos was employed by SSM Health Care Group ("SSMHCG"), not SSM-SLUH (Doc. 15 at 5). SSM-SLUH states that Dr. Alexopoulos mentions a residency contract in his Complaint, thereby incorporating the residency contract employment agreement by reference. *Id.* SSM-SLUH argues that the residency contract shows that Dr. Alexopoulos was actually

employed by SSMHCG. *Id.* Dr. Alexopoulos resists this argument on the grounds that SSMHCG and SSM-SLUH operated as joint employers (Doc. 17 at 10). Dr. Alexopoulos argues that the Eighth Circuit recognizes two overlapping doctrines that support liability across related corporate entities (such as those in this case) in employment cases like this one: (1) the joint employer doctrine and (2) the integrated-enterprise or single-employer doctrine. *Id.* SSM-SLUH claims that Dr. Alexopoulos's Complaint does not allege facts supporting his single-employer/integrated-enterprise theory of liability and that the Court should reject it because it cannot consider new facts or theories not pled in the Complaint (Doc. 18 at 9).

**1. Legal Standard**

A plaintiff may bring FMLA and Title VII claims only against an employer. 29 U.S.C. § 2617(a)(2) (only employees may maintain an action for FMLA violations); *Wilde v. Cnty. of Kandiyohi*, 15 F.3d 103, 104 (8th Cir. 1994) ("Title VII protects workers who are 'employees.'"). Dr. Alexopolous alleges in his Complaint that SSM-SLUH is his employer (Doc. 1 at ¶ 10) and mentions his residency contract (*id.* at ¶¶ 33, 135).

At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. However, the Court does not need to adopt plaintiff's version of facts if they are blatantly contradicted by a contract. *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

**2. Application of Law to Facts**

Dr. Alexopoulos' allegations that SSM-SLUH is his employer is contradicted by his residency contract (Doc. 15-2) (an agreement between Dr. Alexopolous and SSM Health Care Group d/b/a SLU*Care* Physician Group). This Court may consider Dr. Alexopoulos' residency contract at this juncture because it is embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleadings"). That is because the contract's contents were alleged in the Complaint, and no party

questions the contract's authenticity. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012); *see* Doc. 1 (alleging contents of the residency contract at ¶ 33: "[Dr. Alexopoulos'] contract was strictly bound to the [neurosurgery] program," ¶ 135 "[Dr. Alexopoulos'] residency contract was strictly tied to the visa."); *see also* Doc. 17 at 10–13 (Dr. Alexopoulos failing to dispute validity or authenticity of the agreement or his employment by SSMHCG, but rather alleging that SSMHCG and SSM-SLUH are joint employers). Because the residency contract contradicts Dr. Alexopoulos' Complaint, the Court is not required to accept his factual allegation that SSM-SLUH was his employer. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). The Court next considers whether Dr. Alexopoulos adequately pled that SSM-SLUH and SSMHCG operated as joint or integrated employers.

**a. Whether SSM-SLUH and SSMHCG operated as joint or integrated employers**

Dr. Alexopoulos argues in his Opposition that SSM-SLUH and its affiliates function as a joint employer or integrated enterprise (Doc. 17 at 10). Defendants encourage the Court not to consider Dr. Alexopoulos' joint employer and enterprise theory because he did not plead these theories in the Complaint (Doc. 18 at 9).

"The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1057–58 (8th Cir. 2002). A "complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible legal theory." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848–49 (8th Cir. 2014) (quotation marks omitted). However, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). On a motion to dismiss, all reasonable inferences of fact must be made in plaintiff's favor. *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th1365,

1370 (8th Cir. 2022). Thus, Alexopoulos may not save his Complaint by appealing to facts not contained in the Complaint or that could not be fairly inferred from it.

**i. Joint Employer**

First the Court considers whether the Complaint alleges sufficient facts to support a joint employer theory of liability. Under the FMLA, "where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers." 29 C.F.R. § 825.106(a). Whether employers are joint employers is determined by viewing the entire relationship in its totality. 29 C.F.R. § 825.106(b)(1). Joint employment situations may exist where the employee performs work which simultaneously benefits two or more employers or works for two or more employers at different times during the workweek. 29 C.F.R. § 825.106(a). Joint employment is presumed in situations such as:

> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
>
> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
>
> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

*Id*. As far as this Court can determine, the Eighth Circuit has not articulated a test for joint employment in either the FMLA or Title VII context. Dr. Alexopoulos argues that SSM-SLUH and SSMHG operated as joint employers because:

> [t]he residency program was operated through the hospital's facilities, under its management and policies, and subject to its human resources and compliance structure. SSM-SLUH and its affiliated entities jointly administered payroll, benefits, training, and leave policies, and Plaintiff's work was supervised by physicians and administrators employed interchangeably across the entities.

(Doc. 17 at 11). But these allegations do not appear in Alexopoulos' Complaint (Doc. 1). Because the Complaint does not state these facts, he has failed to demonstrate a joint employer theory. *See Iqbal*, 556 U.S. at 678.

**ii. Integrated Enterprise**

Next, the Court considers whether the Complaint alleges sufficient facts to support an integrated enterprise theory of liability.[1] "An integrated enterprise is one in which the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party." *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014). To determine whether separate entities should be treated as an integrated enterprise, courts consider the following "(1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) the centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities." *Id.*; *see also* 29 C.F.R. § 825.104(c)(2) (applying the same factors for FMLA claims). When dealing with two separate legal entities, "the standards are narrow and rigorous, imposing a presumption of corporate separateness." *Id.*

Alexopoulos argues that the "entities share personnel systems, facilities, and administrative infrastructure," "SSM-SLUH and SLUCare report through the same senior management structures within SSM Health, with overlapping directors and executives," there is centralized control over labor relations, and "SSM-SLUH and SSM Health Care Group operate under the SSM Health corporate umbrella, sharing tax identification, benefit plans, and funding streams." (Doc. 17 at 11–12). However, none of these allegations appear in the Complaint. Because the Court will not consider factual allegations not raised in the Complaint, Alexopoulos has failed to plead an integrated enterprise theory. The Court accordingly dismisses Counts III and VI against SSM-SLUH.

---

[1] For the purpose of argument, the Court assumes without deciding that the integrated enterprise theory of liability applies in FMLA cases. Given that there are separate FMLA regulations, it very well may not. *Cf.* 29 C.F.R. § 825.100 *et seq.*

### B. Counts III (FMLA Retaliation) and VI (Title VII Discrimination) Against Drs. Mercier or Coppens

Drs. Mercier and Coppens move to dismiss Counts III and VI (the FMLA Retaliation and Title VII claims) on the grounds that (1) Alexopoulos does not allege that either doctor employed Alexopoulos, which Drs. Mercier and Coppens claim is significant because Title VII liability attaches only to "employers," and (2) neither the FMLA nor Title VII imposes individual liability on supervisors or co-employees (Doc. 15 at 9). Dr. Alexopoulos does not respond to these arguments (Doc. 17).

#### 1. Legal Standard

Title VII prohibits "unlawful employment practice[s]" by an "employer." 42 U.S.C. § 2000e-2(a). "Title VII addresses the conduct of employers only and does not impose liability on coworkers," *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006), or "supervisors," *Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997). On the other hand, the FMLA *does* impose liability upon individuals because "employer" in the FMLA is defined as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611(4)(A)(ii)(I). "The FMLA prohibits employers from discriminating against an employee for asserting his rights under the Act." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006). This prohibition includes "consideration of an employee's use of FMLA leave as a negative factor in an employment action." *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012) (citation omitted).[2]

[2] The Eighth Circuit appears to have held that 29 U.S.C. § 2615(a)(2) provides that it is unlawful to discriminate against an employee for asserting his rights under the Act. *Stallings*, 447 F.3d at 1051; *Marez*, 688 F.3d at 963. In my view, the plain text of 29 U.S.C. § 2615(a)(2) does not say that, but the plain text of 29 U.S.C. § 2615(a)(1) would encompass such acts because retaliating against an employee for invoking their FMLA rights "interfere[s] with…the exercise of or the attempt to exercise" those FMLA rights. The 29 U.S.C. § 2615(a)(2) provision simply prevents employers from "discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter," which is not the same as discriminating against an individual for invoking their FMLA rights.

#### 2. Application of Law to Facts

The Court dismisses Count VI's Title VII claim against Drs. Mercier and Coppens because Title VII does not impose liability on co-workers or supervisors such as Drs. Mercier and Coppens, who the Complaint does not allege to be "employers" in the typical dictionary-definition sense of the word. But this Court denies the motion to dismiss Count III's FMLA claim against the same two defendants because the FMLA allows for individual liability in circumstances such as this.

First the Court addresses whether Drs. Mercier and Coppens could be "employers" for the purpose of FMLA liability. They are. Drs. Mercier and Coppens are "employers" as the FMLA defines the term in 29 U.S.C. § 2611(4)(A)(ii)(I)—as persons who act "in the interest of an employer." The Complaint alleges facts from which a person could infer that Drs. Mercier and Coppens were acting in the interest of their employer when they interfered with Dr. Alexopolous's FMLA rights. The Complaint states that Dr. Coppens is the Program Director of Neurosurgery and that he oversaw training of residents such as Dr. Alexopoulos. (Doc. 1 at ¶¶ 13, 25–26). The Complaint further states that Dr. Mercier is the Division Director of Neurosurgery. (Doc. 1 at ¶ 12). Both worked at SLU Hospital, which is where Dr. Alexopolous worked as a neurosurgery resident. These are positions of power that imply that their decisions and actions were taken "in the interest of [their] employer." 29 U.S.C. § 2611(4)(A)(ii)(I).

Drs. Mercier and Coppens argue that they cannot be held liable under the FMLA because "Plaintiff does not allege that Drs. Coppens or Mercier had any authority over his leave, made decisions regarding his FMLA eligibility, or otherwise interfered with his rights under the statute." (Doc. 15 at 9–10). This argument also fails. Maybe the Complaint fails to use those exact words, but the gist of the Complaint is that Drs. Coppens and Mercier were involved in such decisions and interfered (directly or indirectly) with his rights under the statute. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (holding that at motion to dismiss stage, court draws all reasonable inferences from the complaint in favor of the plaintiff); (Doc. 1 at ¶ 111 ("Dr. Jeroen Coppens … later signed [Dr. Alexopoulos'] FMLA approval

paperwork.")); (*Id.* at ¶¶ 110–11 ("Defendants knowingly accepting Plaintiff's FMLA leave and continued to acknowledge his status as a resident for over 20 days" but then nearly a month into Plaintiff's FMLA leave "the hospital abruptly reversed its position."); (Doc. 1 at ¶ 113 ("Defendants' retroactive claim that Plaintiff voluntarily resigned was a pretextual maneuver to facilitate his removal.")). Additionally, this argument fails because it reads liability requirements into FMLA discrimination that do not exist. An employer is "any person who acts, directly or indirectly, in the interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Such "employer[s]" may not "interfere with, restrain, or deny the exercise of" FMLA rights. 29 U.S.C. § 2615(a)(1). The Complaint alleges interference with FMLA rights by Drs. Mercier and Coppens. The Court is unaware of any Eighth Circuit or Supreme Court precedent requiring more, and Drs. Mercier and Coppens cite only one out-of-circuit district court case to support the proposition that an FMLA claim should be dismissed against a manager where plaintiff failed to allege any control over leave decisions. (Doc. 15 at 10 (citing *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996)). For the reasons stated above, the Complaint alleges that Drs. Mercier and Coppens interfered with his exercise of FMLA rights. Therefore, the Court denies dismissal of Count III against Drs. Mercier and Coppens.

### C. Count IV: Discrimination, Retaliation, and Harassment in Violation of the MHRA Against SSM-SLUH

Count IV is a claim under the Missouri Human Rights Act (MHRA) for discrimination based on Dr. Alexopolous's ethnicity, ancestry, and national origin. Defendants seek to dismiss this count against SSM-SLUH on two separate bases: (1) Dr. Alexopoulos failed to obtain a right-to-sue letter from the Missouri Commission on Human Rights (MCHR) and (2) SSMHCC and its subsidiaries are religious organizations exempt from the MHRA. (Doc. 15 at 4–5). Dr. Alexopoulos does not have a right-to-sue letter and asks the Court to equitably waive the requirement because he believes MCHR's refusal to issue a letter was legal error

(Doc. 17 at 8–9).[3] Because the first basis is dispositive of this Count, the Court dismisses Count IV against SSM-SLUH.

**1. Legal Standard**

"[T]o initiate a claim under the MHRA a party must timely file an administrative complaint with MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). "Only after a plaintiff receives a right-to-sue letter from the MCHR may he file an MHRA claim." *Busch v. AppleCare Serv. Co., Inc.*, 2024 WL 2048861, at *4 (E.D. Mo. May 8, 2024) (citing *Hammond v. Mun. Corr. Inst.*, 117 S.W.3d 130, 136 (Mo. App. 2003)). "Missouri law requires plaintiffs to exhaust their administrative remedies prior to bringing MHRA claims." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021) (citing Mo. Rev. Stat. § 213.075.1). The Eighth Circuit has held "that the Missouri courts would consider a right-to-sue letter as a condition precedent, although not a jurisdictional prerequisite, to bringing an action under the MHRA." *Whitmore v. O'Connor Mgmt., Inc.*, 156 F.3d 796, 800 (8th Cir. 1998).

**2. Application of Law to Facts**

The Court finds no Missouri case law supporting the proposition that the requirement to obtain a right to sue letter may be equitably waived. Dr. Alexopoulos's argument that the MCHR's decision is legal error asks this Court to review the MCHR's decision. But the Missouri Supreme Court has held that review of the MCHR's decisions must occur in Missouri Circuit Court within thirty days of the decision, not in this Court:

> If the executive director [of the MCHR] finds 'no probable cause,' then the complaint is closed and the complainant can proceed no further.

[3] Dr. Alexopoulos states in his Complaint that he received a right to sue letter from the MCHR and EEOC on May 23, 2025 (Doc. 1 ¶ 8). Defendants' Motion to Dismiss notes Dr. Alexopoulos "does **not** possess a Notice of Right to Sue from the MCHR that would authorize his MHRA claim." (Doc. 15 at 4) (emphasis in original). Dr. Alexopoulos admits in his Opposition brief that he failed to obtain a letter "through no fault of his own" and asks the Court to waive the requirement of a right to sue letter (Doc. 17 at 9). The Court treats as true Dr. Alexopoulos' admission that he does not have a right-to-sue letter.

> Although the statute does not directly address whether or how the executive director's 'no probable cause' determination can be reviewed, agency regulations have, since 1988, provided for judicial review, stating:
>
> "Any person aggrieved by dismissal of a complaint may obtain judicial review by filing a petition *in the circuit court of the county of proper venue* within thirty (30) days after the mailing or delivery of the notice of dismissal. Judicial review shall be in the manner provided by Chapter 536, RSMo for noncontested cases."

*State ex rel. Martin-Erb v. Missouri Comm'n on Hum. Rts.*, 77 S.W.3d 600, 604 (Mo. 2002) (emphasis added) (quoting 8 CSR 60–2.015(7)(E)). If Dr. Alexopoulos disagreed with the MCHR's decision, he should have appealed the decision in state circuit court within 30 days, which he did not do. *See id.* This Court will not disturb MCHR's decision. Accordingly, the Court dismisses Count IV against SSM-SLUH.

**D. Count V: Violation of the Missouri Whistleblower Protection Act Against SSM-SLUH**

Defendants argue that the Court should dismiss Count V against SSM-SLUH (violation of the Missouri Whistleblower Protection Act (WPA)) because SSM Health Care Group and its subsidiaries are religious organizations exempt from liability under the statute (Doc. 15 at 5). The WPA prohibits employers from discharging an individual for reporting to the proper authorities an unlawful act or serious misconduct of his employer. Mo. Rev. Stat. § 285.575.2(4). This argument is an affirmative defense, which is defined as: "[a] defendant's assertion of facts and arguments that, if true, will *defeat* the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020) (quoting Black's Law Dictionary (11th ed. 2019)) (emphasis in original). A court may dismiss on the basis of an affirmative defense when the affirmative defense is apparent from the face of the complaint. *See Zean*, 858 F.3d at 526.

It is true that the WPA expressly excludes from the definition of "employer" "corporations and associations owned or operated by religious or sectarian organizations." Mo. Rev. Stat. § 285.575(2). But the Complaint does not state

whether SSM-SLUH is owned or operated by religious or sectarian organizations.[4] To make the case that SSM-SLUH is a religious organization, Defendants point to two documents: (1) a Declaration by the Holy See that SSMI Health ministries is a public juridic person[5] (Doc. 15 at 6; Doc. 15-3, Exhibit C) and (2) a section of the Official Catholic Directory, which Defendants argue confirms the Catholic Church's declaration that SSM-SLUH is a religious organization operated by the Catholic Church (Doc. 15 at 7; Doc. 15-4, Exhibit D).

### i. Legal Standard

"If, on a motion under Rule 12(b)(6)..., matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Federal] Rule [of Civil Procedure] 56." Fed. R. Civ. P. 12(d). However, courts may consider materials embraced by the complaint without converting the motion to dismiss into a motion for summary judgment. *Zean*, 858 F.3d at 527. Materials courts may consider without converting a motion to dismiss into a motion for summary judgment include "matters incorporated by reference or integral to the claim[s], items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits…whose authenticity is unquestioned." *Id.* (quotation omitted).

### i. Application of Law to Facts

The Court declines to dismiss this Count because Defendants have not demonstrated that the Court may take notice of Defendants' exhibits without converting the motion to one for summary judgment. First, Exhibits C and D are not obviously embraced by the pleadings because the documents were not referenced in the Complaint. *See Zean*, 858 F.3d at 526 ("In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose

---

[4] Defendants argue that SSM Health Care Credit Group (SSMHCCG) and its subsidiaries SSM-SLUH and SSM Health Care Group (SSMHCG) are religious organizations (Doc. 15 at 5–6).

[5] "A public juridic person is the canon-law equivalent of a corporation." *Feather v. SSM Health*, 2018 WL 3536613, at *3 (E.D. Mo. July 23, 2018).

authenticity no party questions, but which are not physically attached to the pleadings.'") (citation omitted).

The Court also declines to take judicial notice of the documents under Federal Rule of Evidence 201 because they are not "fact[s] … not subject to reasonable disputebecause it is [not] generally known" or "accurately and readily determin[able]" that SSM-SLUH and its subsidiaries are religious organizations. Fed. R. Evid. 201(b). Even the exhibits attached to the Motion to Dismiss do not demonstrate that SSM-SLUH (the actual defendant is named "SSM Health St. Louis University Hospital") is a "corporation[ ] [or] association[ ] owned or operated by [a] religious or sectarian organization[ ]." Mo. Rev. Stat. § 285.575(2). Exhibit 3, the letter from the Vatican, indicates that SSM Health Ministries is a public juridic personality, but it does not list "SSM Health St. Louis University Hospital" as part of those SSM Health Ministries (Doc. 15-3 at 1). Exhibit 4, the "Official Catholic Directory" does not list "SSM Health St. Louis University Hospital" as an entity, though it does include a few other SSM entities (Doc. 15-4 at 3).

Additionally, Defendants do not demonstrate how Exhibits C and D are public records. The Eighth Circuit does not appear to have defined what counts as a "public record." The First Circuit has explained that:

> [T]here are limits to [what the court may consider matters of public record]. Many documents in the possession of public agencies simply lack any indicia of reliability whatsoever. In that regard, they are unlike official records, such as birth or death certificates and other similar records of vital statistics …. [T]he phrase 'official public records' when used in the present context, appears limited, or nearly so, to documents or facts subject to judicial notice under Federal Rule of Evidence 201.

*Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citation and quotation omitted). In this case, Defendants have offered no explanation for why the Holy See Decree and the excerpt from The Official Catholic Directory (a publication available for purchase, not for free, and so quite possibly not "public" on this basis as well)[6] are public records in that there is indicia of reliability. The Court has no way to assess

[6] https://perma.cc/4P8R-SW4S.

the indicia of reliability for these documents. Thus, it declines to take judicial notice of the exhibits.

Finally, the Court does not find persuasive Defendants' argument that SSM-SLUH is a religious organization based on non-binding case law (Doc. 15 at 5–7) , where determinations were made with evidence not before this Court. Accordingly, the Court declines to dismiss Count V against SSM-SLUH.

### E. Counts IV (MHRA) and V (WPA) Against Dr. Mercier and Dr. Coppens

Defendants move to dismiss Counts IV (MHRA) and V (WPA) against Drs. Mercier and Coppens on the grounds that the MHRA and WPA do not permit individual liability. (Doc. 15 at 8). Dr. Alexopoulos does not address this argument. (Doc. 17).

#### i. Legal Standard

The WPA prohibits employers from discharging an individual for reporting to the proper authorities an unlawful act or serious misconduct of his employer. Mo. Rev. Stat. § 285.575(4). The MHRA prevents employers from engaging in certain discriminatory practices based on an employee's race, color, religion, national origin, sex, ancestry, age or disability. Mo. Rev. Stat § 213.055(1). Under both the WPA and the MHRA, "employer" specifically does not include "an individual employed by an employer." Mo. Rev. Stat. § 285.575.2(2) (WPA); Mo. Rev. Stat. § 213.010(8)(c) (MHRA); *Loomis v. Bowers*, 645 S.W.3d 633, 639 (Mo. App. 2022) ("[F]ollowing the 2017 amendments to the MHRA, individuals can no longer be sued for unlawful employment practices…."); *Mucci v. St. Francois Cnty. Ambulance Dist., No.*, 2019 WL 6170721, at *5 (E.D. Mo. Nov. 20, 2019) ("[A] claim for wrongful discharge cannot be brought against the District or the Individual Defendants as they are explicitly excluded from the definition of 'employer' under the WPA.").

#### ii. Application of Law to Facts

Because the MHRA and WPA explicitly exclude individuals employed by an employer from their definitions of "employer," Drs. Mercier and Coppens cannot be

held liable under these statutes. The Court therefore dismisses Counts IV and V against Drs. Mercier and Coppens.

## CONCLUSION

Defendants' Motion to Dismiss (Doc. 14) is **GRANTED** with respect to Counts IV and VI as applied to all Defendants, Count III against SSM-SLUH, and Count V with respect to Drs. Mercier and Coppens. Defendants' Motion is **DENIED** with respect to all other counts.

Dated this 23rd day of September, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE